**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

| | |
|---|---|
| URBAN ONE, INC., | |
| Plaintiff, | Civil Action No. _____ |
| v. | **JURY TRIAL DEMANDED** |
| MICK UNPLUGGED, LLC and MICK D. HUNT, JR., | <span style="color:red">**REDACTED VERSION**</span> |
| Defendants. | |

**COMPLAINT**

Plaintiff Urban One, Inc. ("Urban One" or "Plaintiff"), by and through their undersigned counsel, alleges as follows:

**PARTIES**

1.      Plaintiff Urban One is a corporation organized and existing under the laws of the State of Delaware with a principal place of business at 1010 Wayne Avenue, 14th Floor, Silver Spring, Maryland 20910.

2.      Upon information and belief, Defendant Mick Unplugged, LLC ("Mick Unplugged") was a limited liability company organized and existing under the laws of the State of North Carolina, with a registered business address at 925 Sweet Olive Ct., Wake Forest, North Carolina 27587.  Mick Unplugged was administratively dissolved as of May 27, 2025.

3.      Upon information and belief, Mick D. Hunt, Jr. ("Hunt") is an individual residing at 350 Carriage Hill Drive, Easley, South Carolina 29642.

**VEIL PIERCING ALLEGATIONS AGAINST HUNT**

4.      At all times relevant to this action, Hunt utilized Mick Unplugged as a mere instrumentality in disregard of corporate formalities to conduct his own personal business and to

perpetrate and shield himself from liability for improper conduct, including evading legal obligations and fraudulent conduct.

5.      Mick Unplugged was incorporated by Hunt through Articles of Organization filed with the North Carolina Secretary of State on December 22, 2023 ("Articles of Organization").  A true and correct copy of the Articles of Organization is attached as **Exhibit 1**.

6.      The Articles of Organization listed Hunt and Marcey Bothe as the Members of Mick Unplugged.  *See* Exhibit 1, p. 2.  Upon information and belief, Marcey Bothe is Hunt's spouse.

7.      Upon information and belief, Hunt served as the Chief Executive Officer of Mick Unplugged, prior to its dissolution.

8.      Upon information and belief, Hunt totally controlled and dominated Mick Unplugged and directed its activities for his own personal benefit with disregard of corporate formalities.

9.      The Articles of Organization list the principal office of Mick Unplugged as 925 Sweet Olive Ct, Wake Forest, North Carolina 27587.  *Id.* at p. 1.

10.      As discussed below, the relevant agreements at issue in this action, entered into on August 27, 2024 and March 28, 2025, respectively, were entered into between Urban One and Mick Unplugged and identify Mick Unplugged as having an address of 350 Carriage Hill Drive, Easley, South Carolina 29642.  Upon information and belief, that address is Hunt's personal residence.  Upon information and belief, no filings were made with the North Carolina Secretary of State to change the principal office address of Mick Unplugged.

317625823

11.     Thus, upon information and belief, Hunt maintained no office for Mick Unplugged separate from his personal residence, and he considered his personal address as the location of that entity when he registered a different address with the North Carolina Secretary of State.

12.     On May 27, 2025, the North Carolina Secretary of State issued a Certificate of Administrative Dissolution to Mick Unplugged ("Dissolution Certificate"), for failure to comply with corporate formalities, *i.e.*, failing to file an annual report.  A true and correct copy of the Dissolution Certificate is attached as **Exhibit 2**.  Defendants never advised Urban One of the dissolution of Mick Unplugged.  Thus, despite Hunt using Mick Unplugged as an operating entity and a contracting entity with Urban One, Hunt failed to maintain that entity.  Hunt did not maintain the existence and solvency of that entity, there was a clear absence of required corporate records and filings, and thus Hunt disregarded corporate formalities.

13.     Despite Hunt failing to maintain Mick Unplugged and the issuance of the Dissolution Certificate, Hunt continued in his personal capacity to act as though Mick Unplugged was still an extant entity and to operate as Mick Unplugged for his own personal business, as described in further detail below.  Thus, Hunt has not respected or maintained corporate formalities and has used Mick Unplugged, which he allowed to be dissolved, as a mere instrumentality to pursue his personal activities despite that entity's dissolution.

14.     For example, as described below, Hunt, through Mick Unplugged, entered into an agreement with Urban One and an amendment to that agreement.  However, after Hunt allowed Mick Unplugged to be dissolved, he continued in his personal capacity to purport to take actions on behalf of the dissolved Mick Unplugged entity under those agreements.  For example, Hunt delivered podcast episodes under those agreements after Hunt allowed Mick Unplugged to be dissolved and without ever giving notice to Urban One of that dissolution.

15.     Despite allowing Mick Unplugged to be dissolved, Hunt in his personal capacity is still acting through that now defunct entity.  For example, Hunt advertises "Mick Unplugged" as that entity's podcast on his website at www.mickhuntofficial.com/mick-unplugged-podcast/.

16.     Further, upon information and belief, on or about July 23, 2025, Hunt entered into a partnership with Realm, again under the "Mick Unplugged" entity moniker.  A true and accurate copy of a press release announcing the partnership is attached as **Exhibit 3**.

17.     In view of the above, upon information and belief, Mick Unplugged does not have any separate and distinct existence from Hunt.

18.     Further, as detailed below, upon information and belief, Hunt allowed Mick Unplugged to be dissolved as part of his scheme to evade his legal and contractual obligations, to breach and repudiate the agreements at issue, and to attempt to deny Urban One any effective remedies against his improper and fraudulent conduct.  As detailed below, ███████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████ This improper conduct has caused significant injuries to Urban One.  Hunt is attempting to use Mick Unplugged and its dissolution to evade liability for this conduct.

19.     Hunt used and is using Mick Unplugged and its dissolution to evade legal and contractual obligations, to perpetuate a fraud, to shield his improper conduct, and to attempt to insulate himself from liability for his improper and fraudulent conduct.

20.     In view of the above, as well as the allegations below, corporate veil piercing is warranted here, and Hunt has personal liability for the causes of action set forth below.

317625823

## NATURE OF ACTION

21.    This is an action for breach of contract, breach of the implied covenant of good faith and fair dealing, fraudulent inducement, and for unjust enrichment.

## JURISDICTION AND VENUE

22.    This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(a), because, upon information and belief, there is complete diversity of citizenship between Urban One and Defendants, and the amount in controversy is in excess of $75,000.00, exclusive of interest and costs.

23.    This Court has personal jurisdiction over Defendants because Plaintiff is authorized and regularly conducts business in the State of Maryland and Defendants did business with and directed activities specifically toward Maryland in connection with the agreements between the parties, including executing agreements with Plaintiff being located in Maryland, sending Podcast episodes to Plaintiff and its agents being located in Maryland, and engaging in business communications and activities with Plaintiff being located in Maryland.

24.    ███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████

25.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to Urban One's claims occurred in Maryland and Urban One regularly conducts business in this Judicial District and has it principal office in this Judicial District. ████

███████████████████████████████████████████████████████

██████████████████████████████

317625823

## BACKGROUND

26.     Urban One is a media company that provides culturally relevant integrated content through radio, television, and digital platforms.

27.     Hunt is the host and producer of a podcast entitled "Mick Unplugged" (the "Podcast").

28.     On or about August 2024, Hunt was introduced to Urban One as an up-and-coming podcast talent with a new show concept. Prior to that date, the Podcast had demonstrated purported rapid growth in downloads and audience engagement. Downloads and audience engagement are the primary metrics used to measure a podcast's reach and success. Urban One relied on the purported success of the Podcast in entering into negotiations with Defendants to distribute the Podcast on Urban One's platform.

### The Podcast License Agreement

29.     In reliance on the download metrics presented by Defendants, on August 27, 2024, the parties entered into a Podcast License Agreement (the "Podcast License Agreement"). Hunt signed the Podcast License Agreement on behalf of Mick Unplugged. A true and accurate copy of the Podcast License Agreement is attached as **Exhibit 4**.

30.     ███████████████████████████████████████████████
████████████████████████████████████████████████████████
███████████████████

31.     ██████████████████████████████████████████
█████████████████

████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

317625823



317625823

35. ████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████

36. ████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████

37. ████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████



██████████████████

**Unusual Download and Listener Activity Patterns for Podcast**

38.    On or about November 20, 2024, Urban One received an unsolicited communication from its third-party analytics partner raising concerns regarding abnormal download and audience engagement behavior relating to the Podcast.

39.    The communication raised several red flags related to the download and audience engagement patterns for the Podcast, including: (1) the Podcast had high download counts, but low

listener counts; (2) a large number of the downloads of the Podcast were atypically directed to older episodes; and (3) a significant volume of the traffic was attributed to "iTunes," a legacy platform Apple had discontinued in favor of Apple Podcasts. These issues suggested that the download data for the Podcast was being manipulated to show high growth patterns for the Podcast that did not reflect actual audience engagement.

40.     Urban One raised the issues identified by the third-party analytics partner with Defendants. Defendants represented the unusual volume of downloads of older episodes could be attributed to ongoing guest promotion that Defendants asserted drove traffic to older episodes. Defendants further represented that Urban One's hosting platform was incorrectly reporting Apple traffic as being from iTunes. Urban One could not test these representations from Defendants because at that time Urban One did not have access to, for example, Apple Podcast analytics, to which only Defendants had access.

41.     Urban One preliminarily accepted and credited the explanations and representations offered by Defendants and continued with the business relationship based on those representations.

42.     When Urban One was later briefly given access by Defendants to their Apple Podcast analytics (in May 2025), Urban One discovered that in November 2024, the Podcast only had 772 engaged listeners on Apple Podcasts despite having 1.1 million downloads. The number of engaged listeners was abnormally low for such a high number of downloads, confirming the concerns raised by Urban One's third-party analytics partner.

**Defendants Express Dissatisfaction with Podcast License Agreement**

43.     The Podcast continued to show high download metrics, which led to the Podcast receiving a high national ranking for visibility.

317625823

44.    On or about March 4, 2025, Defendants indicated to an Urban One representative that they had been receiving multiple offers for distribution of the Podcast from other podcast networks, including significant annual guarantees.  Defendants' engagement in discussions with these third parties violated Urban One's exclusive rights under the Podcast License Agreement.

45.    Defendants further indicated that the compensation provided by Urban One pursuant to the Podcast License Agreement was "not even close" to third party offers and questioned their decision to join the Urban One network.  In those March 2025 conversations, Defendants relied on the reported high download metrics for the Podcast to justify their demands for greater compensation.

46.    Defendants also expressed interest in starting their own podcast network as a sub network on the Urban One platform.

47.    To address Defendants' concerns regarding the Podcast License Agreement, and in express reliance on Defendants' representations regarding the Podcast's high download metrics representing authentic audience engagement and high visibility, the parties entered into negotiations regarding an amendment to the Podcast License Agreement.

### Amendment to The Podcast License Agreement

48.    On March 28, 2025, the parties entered into an Amendment to the Podcast License Agreement (the "Amendment") (collectively, with the Podcast License Agreement, the "Agreements").  A true and correct copy of the Amendment is attached as **Exhibit 5**.

49.    Urban One entered into the Amendment to address Defendants' concerns regarding their compensation under the Podcast License Agreement and in an effort to forge a long-term relationship.   The Amendment was executed by Urban One in reliance on Defendants' representations that the Podcast's download metrics represented authentic audience engagement and visibility.  Urban One expressly relied on Defendants' representations that the download

317625823

metrics were organic and authentic (*i.e.*, not manipulated or manufactured) in agreeing to the Amendment.

50. 

51.

**Additional Indications of Improper Manipulation of Download Metrics**

52.    As the number of downloads of the Podcast continued to rise, Urban One noticed several additional red flags.  First, Defendants had no significant public notoriety or media presence prior to launching the Podcast that would explain the rapid and unusual growth shown for the Podcast.  Second, Defendants' YouTube channel displayed significantly lower viewership, inconsistent with the audience size suggested by the number of downloads.  Third, Defendants' social media accounts grew rapidly in a manner that suggested paid growth strategies.  These factors indicated artificial manipulations of download metrics, and a significant misrepresentation of audience size and influence based on the number of downloads.

53.    On or about May 13, 2025, Urban One requested access to Defendants' Apple Podcast analytics, which access would allow for a deeper analysis of the Podcast's analytics, beyond mere download numbers, to evaluate actual audience engagement.  Urban One did not have access to such data prior to this request.  In response, Defendants briefly granted access to their Apple Podcast analytics data.

54.     Urban One's analysis of that data confirmed that the actual listenership for the Podcast was significantly lower than, and inconsistent with, the download metrics.  For example, Urban One discovered that in April 2025, 94% of the 1.8 million downloads of the Podcast were from Apple Podcasts, however there were only 1700 engaged listeners on Apple Podcasts who listened to at least 40% of the Podcast, and there were only 2400 total hours listened.  The Podcast demonstrated significantly lower listener engagement as compared to other podcasts with lower download numbers (but much higher audience engagement numbers), showing that Defendants were artificially inflating downloads.  Further, in June 2025 downloads dropped significantly, further indicating that prior monthly download data had been manipulated.

55.     Urban One also analyzed Defendants' Apple Podcast analytics data for November 2024.  As noted above, that data showed 1.1 million downloads, but only 772 unique listeners. Those analytics further showed that 74,600 Apple followers triggered more than 1 million auto downloads, 77% of which came from desktop computers (which is highly unusual since by industry standards most organic and authentic downloads come from mobile devices).  Further, 78% of download devices were from "unknown brands" which is highly indicative of bot-generated traffic and downloads.   These factors further showed artificial manipulation of downloads.  Further, analysis of the timing and patterns of the downloads showed automated, artificial manipulation of downloads.

56.     All of the above data and analysis shows that Defendants engaged one or more third party services to artificially increase the download numbers for the Podcast to falsely indicate high audience engagement and visibility for the Podcast.

57.     In late May 2025, Urban One confronted Defendants regarding the discrepancy between the large number of the downloads and low levels of actual audience engagement.  While

Defendants disputed that their downloads were being artificially and inorganically manipulated, Defendants nevertheless acknowledged using a third-party service called Audience Lift to artificially enhance the number of downloads of the Podcast.

58.    After Urban One confronted Defendants regarding the discrepancy between the high number of the downloads and low levels of actual audience engagement, Defendants cutoff Urban One's access to their Apple Podcast analytics.

59.    ███████████████████████████████████████████
███████████████████████████████████████████████
█████████████████████████

60.    ███████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
████████████████████████

61.    ███████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
████████████████████████████████████

**Defendants Repudiate the Agreements and Violate Urban One's Exclusive Rights**

62.     On or about May 30, 2025, an Urban One representative contacted Defendants to further discuss the discrepancies between actual audience engagement compared to the high number of downloads.

63.     During the May 30, 2025 call, Defendants ignored Urban One's concerns regarding their manipulation of download and visibility metrics for the Podcast and instead focused on the decrease in gross revenue for the Podcast between March and April.  Within a few days of that conversation, Defendants indicated that they could not continue producing the show based on the April revenue and demanded a sixty-five thousand dollar ($65,000) monthly up front guarantee, which is nowhere supported in the Agreements.

64.     Defendants indicated that if the requested guarantee was not received by June 6, 2025, they would not fulfill their contractual obligations to deliver further episodes under the Agreements.

65.     On that same day, Defendants reiterated to another Urban One representative that they would not continue producing the show in the absence of the requested additional sixty-five thousand dollar ($65,000) monthly payment.

66.     On or about June 9, 2025, Defendants revoked Urban One's access to the Apple Podcast analytics, which access had allowed Urban One to obtain the analytics related to the Podcast discussed above.

67.     ███████████████████████████████████████████
█████████████████████████████████████████████████
██████████████████████

68.     Upon information and belief, "Unplugged Studios" was a new entity under which Hunt intended to personally distribute the Podcast.  Articles of Organization for Unplugged

Studios LLC were filed on April 28, 2025, listing Hunt's personal residence (350 Carriage Hill Drive, Easley, South Carolina 29642) as the initial designated office. A true and accurate copy of the Articles of Organization for Unplugged Studios LLC is attached as **Exhibit 6**.

69.   ████████████████████████████ Defendants began promoting the Podcast on social media platforms under the "Unplugged Studios" branding instead of using Urban One branding.

70.   On or about June 19, 2025, Defendants released two episodes of the Podcast on a platform unaffiliated with Urban One, ████████████████████████████ ████████████████████████

71.   In view of Defendants conduct, Urban One removed Defendants' access to Urban One's OMNY distribution platform out of a concern that Defendants would use their access to remove their prior episodes from that platform. ████████████████████ ████████████████████████████████ ████████████████████████

**Defendants' Breaches of the Agreement**

72.   ████████████████████████ ████████████████████████████████ ████████████████████████████████ ████████████████████████████████ ████████████████████████████████ ██████████████

73.   ████████████████████████ ████████████████████████████████

317625823



74.

75.

76.

77.

████████████████████████████████████████████████████████

███████████████████████████████████

78.    ████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████

79.    ████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████████████████████████████████████████

**Termination of the Podcast License Agreement**

80.    ████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████

81.    ████████████████████████████████████████████

████████████████████

████████████████████████

████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

317625823



82.

83.

**Defendants' Refusal to Pay the Pro-Rated Damages**

84.

85.

86.

317625823

87. 

88.

89.

**COUNT I**
**BREACH OF CONTRACT (Mick Unplugged and Hunt)**

90.     Urban One repeats and realleges the allegations of paragraphs 1 through 89 as if set forth in full herein.

91.     The Agreements are valid and binding contracts between Urban One and Defendants.

92.     Urban One has performed its obligations under the Agreements.

93.

94. ███████████████████████████████████
███████████████████████████████████████
███████████████████████████████

95. ███████████████████████████████████
███████████████████████████

96.  █████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
████████████████████████████████

97. ███████████████████████████████████
██████████████████████████████████████

98. ███████████████████████████████████
███████████████████████████████████████
██████████████████████

99. ███████████████████████████████████
████████████████████████████████

100. ██████████████████████████████████
███████████████████████████████████████
████████

101. ██████████████████████████████████
███████████████████████████████████████

317625823

██████████████████████████████████████████████████████

███████████

102.    Defendants also breached the Podcast License Agreement by allowing Mick Unplugged to be dissolved.

103.    As a result of Defendants' breaches, Urban One has been damaged by Defendants in an amount to be determined at trial but presently believed not to be less than $1.9 million.

104.    Hunt is personally liable for this conduct, including because Hunt was and is the alter ego of Mick Unplugged and is liable for the breaches of contract by Mick Unplugged.

## COUNT II
## PRO-RATED DAMAGES FOR BREACH OF CONTRACT
### (Mick Unplugged and Hunt)

105.    Urban One repeats and realleges the allegations of paragraphs 1 through 104 as if set forth in full herein.

106.    The Podcast License Agreement and Amendment are valid and binding contracts between Urban One and Defendants.

107.    Urban One has performed its obligations under the Podcast License Agreement and Amendment.

108.    As set forth above, Defendants engaged in numerous breaches of the Podcast License Agreement.

109.    ████████████████████████████████████████

110.    ████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████

111.    ████████████████████████████████████████████████

████████████████████████████████████████

112.    As a result of Defendants' breach, Urban One has been damaged by Defendants in an amount to be determined at trial, but currently not less than One Million Nine Hundred Thousand Six Hundred Forty-Three Dollars and 94 Cents ($1,900,643.94), together with consequential damages and interest in an amount to be proven at trial.

113.    Hunt is personally liable for this conduct, including because Hunt was and is the alter ego of Mick Unplugged and is liable for the breach of contract by Mick Unplugged.

**COUNT III**
**BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**
**(Mick Unplugged and Hunt)**

114.    Urban One repeats and realleges the allegations of paragraphs 1 through 113 as if set forth in full herein.

115.    ████████████████████████████████████████

116.    ████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████

117.    Defendants' actions have been taken in a bad faith effort to intentionally deny Urban One the benefits of its bargain under the Agreements.

118.    ████████████████████████████████████████████

████████████████████████████████████████████████

317625823



119. ███████████████████████████████████████

███████████████████████████████

120.    Hunt is personally liable for this conduct, including because Hunt was and is the alter ego of Mick Unplugged and is liable for the breach of the implied covenant of good faith and fair dealing by Mick Unplugged.

**COUNT IV**
**UNJUST ENRICHMENT**
**(Mick Unplugged and Hunt)**

121.    Urban One repeats and realleges the allegations of paragraphs 1 through 120 as if set forth in full herein.



125.    Defendants have been unjustly enriched by their improper conduct in an amount to be proven at trial.

126.    Hunt is and was the alter ego of Mick Unplugged and is liable for the unjust enrichment of Mick Unplugged.

317625823

**COUNT V**
**FRAUDULENT INDUCEMENT**
**(Mick Unplugged and Hunt)**

127.    Urban One repeats and realleges the allegations of paragraphs 1 through 126 as if set forth in full herein.

128.    As set forth above, Defendants fraudulently manipulated the number of downloads of the Podcast in order to falsely represent high audience engagement and to manufacture a high national ranking for the Podcast in terms of audience engagement, visibility, and success. Defendants did this with the intent to mislead Urban One.

129.    Defendants made misrepresentations regarding the downloads being organic, not manipulated, and being authentic, and made misrepresentations regarding the level of audience engagement with the Podcast, with the intention and expectation that Urban One would rely on those representations during the negotiation of the Amendment.

130.    █████████████████████████████████████████████████
████████████████████████████████████████

131.    As detailed above, the downloads and audience engagement metrics were intentionally and artificially manipulated by Defendants, with the intent to induce Urban One to enter into the Agreements and to rely on that data to grant a high level of compensation and benefits to Defendants under the Agreements.

132.    █████████████████████████████████████████████████
█████████████████████████████████████████████████
████████████████████

317625823

133.  ███████████████████████████████████

███████████████████████████████████████

████████████████████████

134.    In addition, upon information and belief, Defendants fraudulently manipulated download, audience engagement, and success metrics for the Podcast in the same manner as alleged above, prior to the execution of the Podcast License Agreement.  ██████████████

███████████████████████████████████████

█████████████████████████████████████

135.    By their improper and fraudulent conduct, Defendants fraudulently induced Urban One to enter into both the Amendment and the Podcast License Agreement.

136.    Based on Defendants' fraudulent conduct, Urban One is entitled disgorgement of the payments made to Defendants, Urban One's damages, and punitive damages based on Defendants' fraudulent activities.

137.    Hunt is personally liable for this fraudulent conduct, including because Hunt was and is the alter ego of Mick Unplugged, and Hunt also made these fraudulent representations personally.

WHEREFORE,

a.    Urban One seeks judgment in its favor on Counts I through V;

b.    Urban One seeks its costs, reasonable attorneys' fees, expenses, and interest; and

c.    Urban One seeks such further and other relief as this Court may deem just and proper.

Dated: August 29, 2025        **TROUTMAN PEPPER LOCKE LLP**

By: *_/s/ Andrew P. Zappia_*
Andrew P. Zappia (MD Bar No: 17406)
70 Linden Oaks, Suite 210
Rochester, NY 14625
Tel.: (585) 270-2102
Email: Andrew.Zappia@troutman.com

Of counsel:

**TROUTMAN PEPPER LOCKE LLP**

Bryan C. Smith (*pro hac vice* to be filed)
70 Linden Oaks, Suite 210
Rochester, NY 14625
Tel.: (585) 270-2141
Email: Bryan.Smith@troutman.com

*Attorneys for Plaintiff Urban One, Inc.*

317625823