**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| URBAN ONE, INC.,<br><br>Plaintiff,<br><br>v.<br><br>MICK UNPLUGGED, LLC and MICK D. HUNT, JR.,<br><br>Defendants. | Civil Action No. 25-cv-02850-LKG<br><br>Dated: October 22, 2026<br><br>**RE-ISSUED** |

## MEMORANDUM OPINION[1]

## I. INTRODUCTION

In this civil action, the Plaintiff, Urban One, Inc. ("Urban One"), brings breach of contract, unjust enrichment, fraudulent inducement and fraud claims against the Defendants, Mick Unplugged, LLC ("Mick Unplugged") and Mick D. Hunt, Jr. ("Hunt"), arising from the termination of the parties' podcast license agreement regarding the series "Mick Unplugged." *See generally* ECF No. 24. The Defendants have moved to dismiss the amended complaint, pursuant to Fed. R. Civ. P. 12(b)(6). ECF No. 29. The Plaintiff has also filed an unopposed motion for leave to file its response in opposition to the Defendants' motion to dismiss under seal. ECF No. 30. The Defendants' motion to dismiss is fully briefed. *See id.*; ECF Nos. 31 and 32. No hearing is necessary to resolve the motions. *See* L.R. 105.6 (D. Md. 2025). For the reasons that follow, the Court: (1) **GRANTS-in-PART** and **DENIES-in-PART** the Defendants' motion to dismiss (ECF No. 29); (2) **GRANTS** the Plaintiff's motion for leave to file its response to the Defendant's motion to dismiss the amended complaint under seal (ECF No. 30); and (3) **DISMISSES** Count II of the amended complaint (ECF No. 24).

[1] The Court initially issued this opinion under seal on October 22, 2026, to allow the parties to review the opinion and request any redactions of sensitive information. ECF No. 35. On November 12, 2026, the parties filed a joint status report with the parties proposed redactions pursuant to the parties' Podcast License Agreement (ECF No. 3-1). ECF Nos. 37 and 37-1. And so, the Court issues the public version of this opinion with redactions.

## II. FACTUAL AND PROCEDURAL BACKGROUND[2]

### A. Factual Background

In this civil action, Urban One brings breach of contract, unjust enrichment, fraudulent inducement and fraud claims against the Defendants arising from the termination of the parties' podcast license agreement regarding the series "Mick Unplugged." *See generally* ECF No. 24. Specifically, Urban One asserts the following five claims against the Defendants in the amended complaint: (1) Breach of Contract (Count I); (2) Pro-Rated Damages for Breach of Contract (Count II); (3) Unjust Enrichment (Count III); (4) Fraudulent Inducement (Count IV); and (5) Fraud (Count V). *Id.* at 19–28. As relief, Urban One seeks, among other things, to recover monetary damages from the Defendants. *Id.* at Prayer for Relief.

The Parties

Plaintiff Urban One, Inc. is a corporation organized under the laws of the State of Delaware, with its principal place of business located in Silver Spring, Maryland. *Id.* at ¶ 1.

Defendant Mick Unplugged, LLC is a former limited liability company, organized under the laws of the State of North Carolina. *Id.* at ¶ 2.

Defendant Mick D. Hunt, Jr. is a resident of the State of South Carolina. *Id.* at ¶ 3.

Case Background

As background, Urban One is a media company that provides culturally relevant content through radio, television and digital platforms. *Id.* at ¶ 26. Defendant Mick D. Hunt, Jr. is the producer of a podcast entitled "Mick Unplugged" (the "Podcast"). *Id.* at ¶ 27.

In 2024, Urban One and Mr. Hunt entered into negotiations to distribute the Podcast on Urban One's platforms. *Id.* at ¶ 28. And so, on August 27, 2024, Urban One and Mick Unplugged entered into a podcast license agreement (the "Podcast License Agreement") that granted Urban One the worldwide exclusive rights to the Podcast, including streaming on its digital streaming platform.[3] *Id.* at ¶¶ 29-30.

---

[2] The facts recited in this Memorandum Opinion are taken from the amended complaint; the Defendants' motion to dismiss and the memorandum in support thereof; and Urban One's response in opposition thereto. ECF Nos. 24, 29, 31 and 32.

[3] The Podcast License Agreement is signed by Mick D. Hunt, Jr. in his capacity as the CEO for Mick Unplugged, LLC. ECF No. 3-2 at 3.

<u>The Podcast License Agreement</u>

There are several provisions in the Podcast License Agreement that are relevant to the pending motion to dismiss.

First, the Podcast License Agreement describes the rights granted under that agreement and provides that:

> **[***]**

ECF No. 3-1 at 2–3. The Podcast License Agreement also provides that:

> **[***]**

*Id.* at 3. And so, pursuant to the Podcast License Agreement, Mick Unplugged agreed to deliver a minimum of [***] audio and video episodes of the Podcast per year.[4]
*Id.* at 2.

Second, the Podcast License Agreement addresses Mick Unplugged's deliverables under that agreement and provides that: [***]. *Id.* at 5.

Third, the agreement also addresses Mick Unplugged's compensation and provides that Mick Unplugged would receive a [***] *Id.* at 13. In this regard, the agreement further provides, in relevant part, that:

> **[***]**

*Id.* at 4.

Fourth, Section 6.3 of the Podcast License Agreement addresses "fraudulent activity" and provides that:

> **[***]**

*Id.* at 9. Fifth, Section 11 of the Podcast License Agreement addresses "representations and warranties" and provides, in relevant part, that:

> **[***]**

*Id.* at 10.

Lastly, Section 14 of the Podcast License Agreement addresses [***] and provides that:

> **[***]**

---

[4] The Podcast License Agreement provides that the initial term of that agreement will commence on August 27, 2024, and end one year from the date of the initial exhibition, broadcast, or distribution of the licensed material. ECF No. 3-1 at 3–4.

*Id.*

The Amended Podcast License Agreement

On March 28, 2025, Urban One and Mick Unplugged entered into an amendment to the Podcast License Agreement (the "Amendment").[5] ECF No. 3-2 at 1. The Amendment extends the License Period under the Podcast License Agreement to December 31, 2029, and increases Mick Unplugged's revenue share to [***]. *Id.* at 2. The Amendment also provides that:

> **[***]**

*Id.*

On or about May 27, 2025, Mick Unplugged, LLC was administratively dissolved. ECF No. 24 at ¶ 2. Urban One alleges that, shortly thereafter, the Defendants "repudiated" the Podcast License Agreement and the Amendment on May 30, 2025. *Id.* at ¶¶ 62-67.

Urban One's Allegations

In the amended complaint, Urban One alleges that it relied on the download metrics for the Podcast that were presented to it by the Defendants, in deciding to enter into the Podcast License Agreement. *Id.* at ¶¶ 28–29. Urban One also alleges that these metrics were artificially manipulated by the Defendants to induce Urban One to enter into the Podcast License Agreement and the Amendment, and to increase the Defendants' compensation under these agreements. *Id.* at ¶¶ 143–144.

In this regard, Urban One alleges that, on or about November 20, 2024, it received an unsolicited communication from a third-party analytics partner that raised concerns about abnormal download and audience engagement patterns for the Podcast, including that: (1) the Podcast had high download counts, but low listener counts; (2) a disproportionate number of downloads were directed to older episodes; and (3) a significant volume of traffic was attributed to a legacy platform Apple had discontinued. *Id.* at ¶¶ 38–39. Urban One alleges that it raised these concerns with the Defendants and that the Defendants "represented that the unusual volume of downloads of older episodes could be attributed to ongoing guest promotion that Defendants asserted drove traffic to older episodes . . . and that Urban One's hosting platform w[ere] incorrectly reporting Apple traffic as being from iTunes." *Id.* at ¶ 40. But Urban One alleges that it later discovered that the Podcast had only 772 engaged listeners in November 2024, despite having 1.1 million reported downloads. *Id.* at ¶ 42.

[5] The Amendment is signed by Mick D. Hunt, Jr. in his capacity as the CEO for Mick Unplugged, LLC. ECF No. 3-2 at 3.

Urban One alleges that, on or about March 4, 2025, the Defendants indicated that they were receiving multiple offers for distribution of the Podcast from other networks and that the Defendants also expressed dissatisfaction with their compensation under the Podcast License Agreement. *Id.* at ¶¶ 44–45. And so, Urban One alleges that it entered into negotiations with the Defendants to amend the Podcast License Agreement, "in express reliance on Defendants' representations regarding the Podcast's high download metrics representing authentic audience engagement and high visibility." *Id.* at ¶ 47.

But Urban One alleges that it noticed "several additional red flags," as the number of downloads for the Podcast continued to increase. *Id.* at ¶ 52. In this regard, Urban One alleges that: (1) the Defendants had no significant notoriety; (2) the Defendants' YouTube channel displayed significantly lower viewership; and (3) the Defendants' social media accounts grew rapidly in a manner that suggested paid growth strategies. *Id.* Urban One contends that "these factors indicated artificial manipulation of download metrics, and a significant misrepresentation of audience size and influence based on the number of downloads." *Id.* And so, Urban One requested access to the Defendants' Apple Podcast analytics on May 13, 2025. *Id.* at ¶ 53.

Urban One alleges that its analysis of this data "confirmed that the actual listenership for the Podcast was significantly lower than, and inconsistent with, the download metrics." *Id.* at ¶ 54. In this regard, Urban One alleges that it discovered that, "in April 2025, 94% of the 1.8 million downloads of the Podcast were from Apple Podcasts, however there were only 1700 engaged listeners on Apple Podcasts who listened to at least 40% of the Podcast, and there were only 2400 total hours listened." *Id.* Urban One also alleges that, the Defendants' Apple Podcast analytics data for November 2024 "showed that 74,600 Apple followers triggered more than 1 million auto downloads, 77% of which came from desktop computers (which is highly unusual since by industry standards most organic and authentic downloads come from mobile devices). Further, 78% of download devices were from 'unknown brands' which is highly indicative of bot-generated traffic and downloads." *Id.* at ¶ 55. And so, Urban One contends that these factors show artificial manipulation of downloads and that the "Defendants engaged one or more third party services to artificially increase the download numbers for the Podcast to falsely indicate high audience engagement and visibility for the Podcast." *Id.* at ¶¶ 55-56.

Urban One alleges that it confronted the Defendants about this data in late May 2025, and that the Defendants then cut off Urban One's access to the Apple Podcast analytics. *Id.* at ¶¶ 57–

60. Urban One also alleges that, shortly after it confronted the Defendants about the manipulation of the downloads for the Podcast, the Defendants repudiated the Podcast License Agreement and the Amendment by, among other things: (1) demanding a $65,000 monthly upfront guarantee; (2) revoking Urban One's access to the Apple Podcast analytics; (3) removing Urban One's branding from the Podcast; and (4) releasing two episodes of the podcast on a platform unaffiliated with Urban One. *Id.* at ¶¶ 63–70.

Given this, Urban One contends that the Defendants breached the Podcast License Agreement and the Amendment by engaging in the aforementioned conduct. *Id.* at ¶¶ 72–79. And so, Urban One sent a letter to the Defendants on June 23, 2025, exercising its right to terminate the Podcast License Agreement and the Amendment. *Id.* at ¶ 80.

<u>Urban One's Claims</u>

In the amended complaint, Urban One asserts the following five claims against the Defendants: (1) Breach of Contract (Count I); (2) Pro-Rated Damages for Breach of Contract (Count II); (3) Unjust Enrichment (Count III); (4) Fraudulent Inducement (Count IV); and (5) Fraud (Count V). *Id.* at ¶¶ 90–153. Specifically, in Count I of the amended complaint, Urban One alleges that the Podcast License Agreement and Amendment are valid and binding contracts and that the Defendants breached these agreements by, among other things: (1) manipulating download and engagement metrics; (2) violating its exclusive distribution rights; (3) impairing the value of the rights granted under these agreements; and (4) allowing Mick Unplugged to be dissolved. *Id.* at ¶¶ 90–102. Urban One also alleges that the Defendants breached the implied covenant of good faith and fair dealing by, among other things, manipulating the number of downloads and other audience engagement metrics for the podcast. *Id.* at ¶ 104.

In Count II of the amended complaint, Urban One alleges that the Defendants are obligated to refund to Urban One, on a pro-rata basis, the losses that were caused by their conduct during the terms of the Podcast License Agreement, under the terms of the Podcast License Agreement. *Id.* at ¶ 114. And so, Urban One contends that the Defendants were obligated to pay it [***] within seven days of the date that it provides a termination notice. *Id.* at ¶ 120.

In Count III of the amended complaint, Urban One alleges that the Defendants were unjustly enriched by the revenue-share payments made in reliance on their manipulated metrics

and by distributing the Podcast outside of Urban One's exclusive rights. *Id.* at ¶¶ 125–130. And so, Urban One contends that the Defendants are liable to it for this unjust enrichment. *Id.* at ¶ 130.

In Count IV of the amended complaint, Urban One alleges that the Defendants fraudulently manipulated the Podcast's download and audience engagement metrics, with the intent to mislead and induce Urban One to enter into the Podcast License Agreement and the Amendment. *Id.* at ¶¶ 131–141. And so, Urban One contends that it is entitled to, among other things, disgorgement of the payments made to the Defendants. *Id.* at ¶ 140.

Lastly, in Count V of the amended complaint, Urban One alleges that the Defendants' knowing manipulation and misrepresentations regarding the Podcast's download and audience engagement metrics constitutes fraud, and that Urban One justifiably relied to its detriment on these misrepresentations in deciding to make payments to the Defendants that were larger than what the Defendants were entitled to under the Podcast License Agreement. *Id.* at ¶¶ 142–153. And so, Urban One also contends that it is entitled to, among other things, disgorgement of the payments made to the Defendants, due to the Defendants' alleged fraudulent conduct. *Id.* at ¶ 152.

With regards to Defendant Mick D. Hunt, Jr., Urban One also alleges that Mr. Hunt is personally liable for the conduct alleged in the amended complaint, because he is the alter ego of Mick Unplugged and he personally made the fraudulent representations alleged in the amended complaint. *Id.* at ¶¶ 108, 123, 130, 141 and 153. To support this claim, Urban One alleges that, "[a]t all times relevant to this action, Mr. Hunt utilized Mick Unplugged as a mere instrumentality in disregard of corporate formalities to conduct his own personal business and to perpetrate and shield himself from liability for improper conduct, including evading legal obligations and fraudulent conduct." *Id.* at ¶ 4. Urban One also alleges that Mick Unplugged was incorporated by Mr. Hunt on December 22, 2023, and that the Articles of Organization list Mr. Hunt and his spouse as its members. *Id.* at ¶¶ 5–6.

In addition, Urban One alleges that Mr. Hunt served as the Chief Executive Officer for Mick Unplugged and that he "totally controlled and dominated Mick Unplugged and directed its activities for his own personal benefit with disregard of corporate formalities," and the Podcast License Agreement and the Amendment both provide Mr. Hunt's personal address as the address for the company. *Id.* at ¶¶ 7–11. And so, Urban One contends that Mr. Hunt "allowed Mick

Unplugged to be dissolved as part of his scheme to evade his legal and contractual obligations, to breach and repudiate the agreements at issue, and to attempt to deny Urban One any effective remedies against his improper and fraudulent conduct." *Id.* at ¶ 18.

### B. Procedural Background

Urban One commenced this civil action on August 29, 2025. ECF No. 1. On January 26, 2026, Urban One filed an amended complaint. ECF No. 24.

On March 16, 2026, the Defendants filed a renewed motion to dismiss the amended complaint, pursuant to Fed. R. Civ. P. 12(b)(6), and a memorandum in support thereof. ECF No. 29.

On March 30, 2026, Urban One filed a response in opposition to the Defendants' motion to dismiss. ECF Nos. 31 and 32. On March 30, 2026, Urban One filed a motion for leave to file its response in opposition to the Defendants' motion to dismiss under seal. ECF No. 30.

The Defendants' motion to dismiss having been fully briefed, the Court resolves the pending motion.

## III. LEGAL STANDARDS

### A. Rules 12(b)(6) And 9(b)

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible when "the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

When evaluating the sufficiency of a plaintiff's claims under Fed. R. Civ. P. 12(b)(6), the Court accepts factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *Nemet Chevrolet, Inc. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005) (citations omitted). But the complaint must contain more than "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." *Nemet Chevrolet*, 591 F.3d at 255. And so, the Court should grant a motion to dismiss for failure to state a claim if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *GE Inv. Private Placement Partners II, L.P. v. Parker*,

247 F.3d 543, 548 (4th Cir. 2001) (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 249–50 (1989)).

Rule 9(b) of the Federal Rules of Civil Procedure provides that claims that sound in fraud are subject to a heightened pleading standard, which requires that "the circumstances constituting fraud" be stated "with particularity." Fed. R. Civ. P. 9(b). And so, this Court has held that a plaintiff must plead with particularity, "'who made what false statement, when, and in what manner . . .; why the statement is false; and why a finder of fact would . . . conclude that the defendant acted with scienter . . . and with the intention to persuade others to rely on the false statement.'" *Dominion Fin. Servs., LLC v. Pavlovsky*, 673 F. Supp. 3d 727, 747 (D. Md. 2023) (alterations in original) (quoting *McCormick v. Medtronic, Inc.*, 219 Md. App. 485, 528, 101 A.3d 467, 492–93 (2014)).

**B. Breach Of Contract**

To state a breach of contract claim under Maryland Law, the plaintiff must allege facts to show: (1) that the defendant owed the plaintiff a contractual obligation and (2) a material breach of that obligation. *Allstate Ins. Co. v. Warns*, No. 11-1846, 2012 WL 681792, at *10 (D. Md. Feb. 29, 2012) (citing *Taylor v. NationsBank, N.A.*, 776 A.2d 645, 651 (Md. 2001)). And so, the elements of breach of contract are a "contractual obligation, breach, and damages." *Class Produce Grp., LLC v. Harleysville Worcester Ins. Co.*, No. 16-3431, 2018 WL 1471682, at *8 (D. Md. Mar. 23, 2018) (quoting *Tucker v. Specialized Loan Servicing, LLC*, 83 F. Supp. 3d 635, 655 (D. Md. 2015)).

**C. Unjust Enrichment**

To state a claim for unjust enrichment, a plaintiff must allege facts to show: (1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) acceptance or retention by the defendant of the benefit without the payment of its value. *Lacks v. Ultragenyx Pharm., Inc.*, 734 F. Supp. 3d 397, 408 (D. Md. 2024) (citing *Hill v. Cross Country Settlements, LLC*, 936 A.2d 343, 352 (Md. 2007)). An action for unjust enrichment "cannot be maintained when the subject matter of the claim is . . . governed by an express contract. *Singh v. Lenovo (United States) Inc.*, 510 F. Supp. 3d 310, 328 (D. Md. 2021) (citing *Janusz v. Gilliam*, 947 A.2d 560, 567–68 (Md. 2008)). But there are several exceptions to this rule, including: "(1) if the plaintiff adduces evidence of fraud or bad faith on

the part of the defendant, and (2) if the contract between the parties does not govern the entire subject matter of the claim." *Id.*

**D. Fraudulent Inducement And Fraud Claims**

The elements of a fraudulent inducement claim are: "(1) a material representation of a party was false; (2) falsity was known to that party or the misrepresentation was made with such reckless indifference to the truth as to impute knowledge to him or her; (3) the misrepresentation was made with the purpose to defraud, known as 'scienter'; (4) the person justifiably relied on the misrepresentation; and (5) the person suffered damage directly resulting from the misrepresentation." *Butrim v. Mayor & City Council of Baltimore*, 821 F. Supp. 3d 509, 525 n.5 (D. Md. 2026) (citing *Airport Square Holdings, LLC v. GCCFC 2007-GG9 Colonial Facilities, LLC*, 16-02883, 2017 WL 639230, at *6 (D. Md. Feb. 16, 2017)); *Lawley v. Northam*, No. 10-1074, 2011 WL 6013279, at *9 (D. Md. Dec. 1, 2011). The elements of a fraud claim are substantially the same. A plaintiff must show: "(1) that the defendant made a false representation to the plaintiff, (2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth, (3) that the misrepresentation was made for the purpose of defrauding the plaintiff, (4) that the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) that the plaintiff suffered compensable injury resulting from the misrepresentation." *Kantsevoy v. LumenR LLC*, 301 F. Supp. 3d 577, 601 (D. Md. 2018) (quoting *Nails v. S & R, Inc.*, 639 A.2d 668 (Md. 1994)). Fraudulent inducement and fraud claims are subject to the heightened pleading standard of Fed. R. Civ. P. 9(b), which requires that a plaintiff "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *see also Dominion Fin. Servs., LLC v. Pavlovsky*, 673 F. Supp. 3d 727, 747 (D. Md. 2023) (alterations in original) (quoting *McCormick v. Medtronic, Inc.*, 101 A.3d 467, 492–93 (2014)).

**E. Piercing The Corporate Veil**

Lastly, Maryland law provides that "a corporate entity may be disregarded when necessary to prevent fraud or to enforce a paramount equity." *Schlossberg v. Bell Builders Remodeling*, Inc., 109 A.3d 1146 (Md. 2015); *see also Neuberger, Quinn, Gielen, Rubin & Gibber, P.A. v. United States*, No. 22-2129, 2026 WL 1473818, at *13–14 (D. Md. May 26, 2026). In *Hildreth v. Tidewater Equipment Co.*, the Supreme Court of Maryland described the three circumstances in which the Court may disregard the corporate form as follows:

> First. Where the corporation is used as a mere shield for the perpetration of a fraud, the courts will disregard the fiction of separate corporate entity.
>
> Second. The courts may consider a corporation as unencumbered by the fiction of corporate entity and deal with substance rather than form as though the corporation did not exist, in order to prevent evasion of legal obligations.
>
> Third. Where the stockholders themselves, or a parent corporation owning the stock of a subsidiary corporation, fail to observe the corporate entity, operating the business or dealing with the corporation's property as if it were their own, the courts will also disregard the corporate entity for the protection of third persons.

838 A.2d 1204, 1210 (Md. 2003); *see also Neuberger*, 2026 WL 1473818, at *13–14; *John Rigney, et al., v. Cyberpoint3 Holdings, LLC, et al.*, No. 23-1420, 2026 WL 2276362, at *16 (D. Md. Aug. 7, 2026). The third circumstance embodies what is sometimes called the "alter ego" doctrine, which is grounded in the principle that, "if the shareholders or the corporations themselves disregard the proper formalities of a corporation, then the law will do likewise as necessary to protect individual and corporate creditors." *Hildreth*, 838 A.2d at 1210 (citation omitted).

To invoke the alter ego theory, a plaintiff must show (1) "complete domination" of the corporate entity, (2) that such domination was used "to commit fraud or wrong, to perpetrate the violation of the statutory or other positive legal duty, or dishonest and unjust act," and (3) that this control "proximately caused the injury or unjust loss"— involving either fraud or "an inequitable result, involving fundamental unfairness." *Id.* And so, while there is "no universal rule as to the specific criteria that courts will consider in determining whether to apply the [alter ego] doctrine," *id.*, the Supreme Court of Maryland has identified the following several relevant factors to take into account:

> (1) whether the corporation is inadequately capitalized, fails to observe corporate formalities, fails to issue stock or pay dividends, or operates without a profit, (2) whether there is commingling of corporate and personal assets, (3) whether there are non-functioning officers or directors, (4) whether the corporation is insolvent at the time of the transaction, and (5) the absence of corporate records.

*Id.*; *Neuberger*, 2026 WL 1473818, at *14; *see also John Rigney, et al.*, 2026 WL 2276362, at *16.

## IV. ANALYSIS

The Defendants have moved to dismiss the amended complaint, pursuant to Fed. R. Civ. P. 12(b)(6), on several grounds. First, the Defendants argue that Urban One has not sufficiently alleged facts in the amended complaint to warrant holding Defendant Mick D. Hunt, Jr. personally liable for the alleged violations in this case, because the amended complaint lacks facts to show that Mr. Hunt's control over Mick Unplugged caused Urban One's alleged injuries. ECF No. 29 at 3–12. Second, the Defendants argue that Urban One also fails to state a plausible breach of contract claim in Count I of the amended complaint, because the Podcast License Agreement's liquidated damages clause is vague and unenforceable, and Maryland does not recognize an independent cause of action for breach of the implied covenant of good faith and fair dealing. *Id.* at 12–20.

Third, the Defendants argue that Count II of the amended complaint fails as a matter of law, because Urban One's claim seeking pro-rated damages is a remedy, rather than an independent cause of action, and this claim is based upon an unenforceable liquidated damages clause. *Id.* at 20–22. Fourth, the Defendants argue that Urban One's unjust enrichment claim in Count III of the amended complaint also fails, because an express contract governs the same subject matter. *Id.* at 22–24. Fifth, the Defendants argue that Urban One's fraudulent inducement claim in Count IV of the amended complaint fails, because the amended complaint lacks factual allegations to show that the Defendants alleged fraudulent conduct induced Urban One to execute the Podcast License Agreement and/or the Amendment. *Id.* at 25–29.

Lastly, the Defendants argue that the Court should dismiss Urban One's fraud claim in Count V of the amended complaint, because Urban One did not rely upon the Defendants alleged fraudulent statements in deciding to enter into the Podcast License Agreement and the Amendment. *Id.* at 30–39. And so, the Defendants request that the Court dismiss the amended complaint. *Id.* at 39.

In its response in opposition to the Defendants' motion to dismiss, Urban One counters that the Court should not dismiss this matter, because: (1) the Defendants are barred under Fed. R. Civ. P. 12(g)(2) from raising a challenge to the factual allegations in the amended complaint to show that Mr. Hunt is the alter ego of Mick Unplugged and the amended complaint sufficiently alleges facts to support its alter ego theory (ECF No. 31 at 3–8); (2) the amended complaint sufficiently alleges a breach of contract claim and does not assert a standalone claim for breach

of the implied covenant of good faith and fair dealing (*Id.* at 8–11); (3) the amended complaint also sufficiently alleges a claim for pro-rata damages and the requested pro-rated damages amount are calculable with reasonable certainty (*Id.* at 11–13); (4) Urban One may pursue its unjust enrichment claim, because the amended complaint alleges that the Defendants acted in bad faith (*Id.* at 13–14); (5) the fraudulent inducement claim alleged in Count IV of the amended complaint is plausible, because Urban One may seek damages for fraudulent inducement under Maryland law; and (6) the fraud claim in Count V of the amended complaint is also sufficiently pled, because the amended complaint alleges facts to show that Urban One justifiably relied on the Defendants' misrepresentations (*Id.* at 14–18). And so, Urban One requests that the Court deny the Defendants' motion to dismiss. *Id.* at 18. In the alternative, Urban One requests leave to further amend the amended complaint. *Id.*

For the reasons that follow, a careful reading of the amended complaint shows that Urban One has sufficiently alleged facts to support its alter ego theory of liability with regards to Mr. Hunt. A careful reading of the amended complaint also shows that Urban One states plausible breach of contract, unjust enrichment, fraudulent misrepresentation and fraud claims in this civil action.

But the Defendants convincingly argue that Urban One improperly asserts an independent cause of action to recover pro rata damages in Count II of the amended complaint. And so, the Court: (1) GRANTS-in-PART and DENIES-in-PART the Defendants' motion to dismiss (ECF No. 29); (2) GRANTS the Plaintiff's motion for leave to file its response to the Defendant's motion to dismiss amended complaint under seal (ECF No. 30); and (3) DISMISSES Count II of the amended complaint (ECF No. 24).

**A. Urban One Sufficiently Alleges Facts To Support Piercing The Corporate Veil**

As an initial matter, a careful reading of the amended complaint shows that Urban One alleges sufficient facts to support its claims against Mr. Hunt in this civil action.[6] This Court has held that, when a plaintiff seeks to hold an individual defendant liable under an alter ego theory, and the defendant challenges that theory in a motion to dismiss, the Court considers whether the plaintiff has sufficiently pleaded the facts necessary to show that the case presents one of the

[6] The Court is satisfied that the Defendants have properly raised their argument that the amended complaint fails to state a claim against Mick D. Hunt, based upon the alter ego theory of liability, because the pending motion to dismiss provides the first opportunity for the Defendants to raise this argument in response to the amended complaint. *See* Fed. R. Civ. P. 12(g)(2). And so, the Defendants have not waived this argument.

"exceptional circumstances" in which the Court should apply the alter ego doctrine. *Cong. Bank v. Potomac Educ. Found., Inc.*, No. 13-889, 2014 WL 347632, at *13 (D. Md. Jan. 30, 2014) (quoting *Hildreth*, 838 A.2d at 1210). In making this determination, the Court considers whether the complaint contains factual allegations that address the factors identified by the Supreme Court of Maryland in *Hildreth v. Tidewater Equipment Co., Inc.*, including, whether the corporate entity: (1) failed to observe corporate formalities; (2) had non-functioning officers or directors; (3) was insolvent at the time of the transaction; or (4) lacked corporate records. *Id.*

Given this, the Court must decide whether Urban One sufficiently alleges facts in the amended complaint to show that Mr. Hunt completely dominated Mick Unplugged. *Cong. Bank*, 2014 WL 347632, at *13; *see also Hildreth*, 838 A.2d at 1210 (requiring "complete domination, not only of the finances, but of policy and business practice in respect to the transaction so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own"). And so, Urban One may proceed with its claims against Mr. Hunt, under an alter ego theory at the pleading stage, if the amended complaint alleges facts that, taken as true, show that Mr. Hunt completely dominated Mick Unplugged and used that control to commit a fraud and/or wrong that proximately caused Urban One's injury. *See Cong. Bank*, 2014 WL 347632, at *13.

Urban One has satisfied this standard here. In the amended complaint, Urban One alleges that Mr. Hunt "was the alter ego for Mick Unplugged," and the amended complaint contains several factual allegations to support this claim. ECF No. 24 at ¶¶ 108, 130, 141 and 153. For example, Urban One alleges that Mick Unplugged had no office separate from Mr. Hunt's personal residence, to show that Mick Unplugged failed to observe corporate formalities. *Id.* at ¶¶ 9–11. Urban One also alleges that the Podcast License Agreement and the Amendment provide the address for Mr. Hunt's personal residence as the company's business address, to show the absence of corporate formalities. *Id.* at ¶¶ 10–11.

The amended complaint also contains factual allegations to show that Mr. Hunt dominated Mick Unplugged. In this regard, Urban One alleges in the amended complaint that Mr. Hunt formed Mick Unplugged, served as the company's Chief Executive Officer, and signed the Podcast License Agreement on the company's behalf, thereby "totally control[ing] and dominat[ing] Mick Unplugged and direct[ing] its activities for his own personal benefit." *Id.* at ¶¶ 5–8 and 29. Urban One also alleges that, after the company's dissolution, Mr. Hunt continued to operate as Mick Unplugged in his personal capacity, by, among other things, delivering

Podcast episodes pursuant to the Podcast License Agreement and the Amendment and advertising the Podcast on his personal website. *Id.* at ¶¶ 13–16.

Lastly, Urban One alleges that Mr. Hunt used his control of Mick Unplugged to commit the fraudulent and wrongful acts alleged in the amended complaint. Notably, Urban One alleges that Mr. Hunt personally made the alleged fraudulent misrepresentations to it about the Podcast's download and audience engagement metrics. *Id.* at ¶¶ 133, 141 and 153.

Given this, the Court is satisfied that, the factual allegations in the amended complaint, taken as true, are sufficient for Urban One to plausibly allege that Mr. Hunt was the alter ego for Mick Unplugged. And so, the Court DENIES the Defendants' motion to dismiss Urban One's claims against Mr. Hunt based upon an alter ego theory.

**B. Urban One Plausibly Alleges A Breach Of Contract Claim**

The Court is also satisfied that Urban One states a plausible breach of contract claim against the Defendants in Count I of the amended complaint. To state a breach of contract claim under Maryland law, Urban One must allege facts to show that the Defendants owed it a contractual obligation and that the Defendants materially breached that obligation. *Allstate Ins. Co. v. Warns*, No. 11-1846, 2012 WL 681792, at *10 (D. Md. Feb. 29, 2012). The Defendants argue in their motion to dismiss that the Court should dismiss Urban One's breach of contract claim, because: (1) the damages clause in the Podcast License Agreement is vague and unenforceable and (2) Maryland does not recognize an independent cause of action for breach of the implied covenant of good faith and fair dealing. *Id.* at 12–20. For the reasons that follow, the Court disagrees.

First, a careful reading of the amended complaint shows that Urban One has sufficiently alleged facts to show that the Podcast License Agreement and the Amendment are valid and enforceable contracts. Notably, Urban One alleges in the amended complaint that it entered into the Podcast License Agreement and the Amendment with the Defendants, that these agreements are valid and binding contracts, and that it performed its obligations under these agreements. ECF No. 24 at ¶¶ 91–92, 28-30 (alleging that Urban One and Mr. Hunt entered into negotiations in 2024 to distribute the Podcast on Urban One's platforms and that, on August 27, 2024, Urban One and Mick Unplugged entered into the Podcast License Agreement) and ¶ 48 (alleging that, on March 28, 2025, Urban One and Mick Unplugged entered into the Amendment). The

amended complaint also expressly incorporates the two agreements at issue. ECF Nos. 3-1 and 3-2.

Urban One also alleges facts to show that the Defendants owed it certain contractual obligations under these agreements. In this regard, Urban One alleges that the Podcast License Agreement requires that: (1) the Defendants deliver a minimum of [***] episodes of the Podcast per year; (2) obligated that the Defendants upload a minimum of [***] episodes of the Podcast weekly; and (3) and that the Defendants not artificially and/or fraudulently manipulate the download and visibility data for the Podcast. *Id*. at ¶¶ 33, 35 and 37. Urban One also alleges that the Defendants materially breached these contractual obligations by, among other things: (1) hiring a third-party service to artificially inflate the number of downloads for the Podcast, in violation of Section 6.3 of the Podcast License Agreement; (2) removing Urban One's branding from the Podcast and distributing the Podcast on another platform, in violation of Urban One's exclusive rights; (3) impairing the value of the rights granted to Urban One, in violation of Section 11; and (4) refusing to deliver additional episodes of the Podcast without a $65,000 monthly guarantee. *Id.* at ¶¶ 57, 63–70 and 94–101. And so, the Court is satisfied that the amended complaint plausibly alleges the elements of a breach of contract claim.

The Defendants' argument that Urban One's breach of contract claim is not plausible, because the damages provision in Section 14 of the Podcast License Agreement is vague and unenforceable, is also not persuasive. As the Defendants correctly observe, this provision provides, in relevant part that: [***]. ECF No. 3-1 at 10. But, to the extent that the Defendants can show that this damages provision is unenforceable, such a deficiency would not defeat Urban One's breach of contract claim.

Notably, under Maryland law, "[i]t is not necessary that the plaintiff prove damages resulting from the breach [of contract], for it is well settled that where a breach of contract occurs, [a plaintiff] may recover nominal damages even though he has failed to prove actual damages." *Int'l Fid. Ins. Co. v. Mahogany, Inc.*, No. 11-1708, 2011 WL 3055251, at *2 n.1 (D. Md. June 25, 2011). Given this, the Court will not dismiss Urban One's breach of contract claim, if the amended complaint alleges facts to support a reasonable inference that some remedy is available to Urban One for the breach of the Podcast License Agreement and the Amendment. *Id.* (citing *Bontkowski v. Smith*, 305 F.3d 757, 762 (7th Cir. 2002)); *see also Woodward v. GEICO Advantage Ins. Co.*, No. 21-952, 2022 WL 2953053, at *9 (D. Md. July 25, 2022); *Burt*

*v. Maasberg*, No. 12-0464, 2014 WL 1291834, at *30 (D. Md. Mar. 28, 2014) (holding that dismissal based upon the "selection of an improper remedy is inappropriate, so long as some other remedy is available").

The amended complaint makes clear that Urban One seeks to recover "all damages available under applicable law for breach of contract, including without limitation, compensatory damages" for the breaches alleged in the amended complaint. ECF No. 24 at ¶ 107. Given this, Urban One's breach of contract claim is not dependent upon its ability to recover a pro-rated amount of damages under Section 14 of the Podcast License Agreement.[7] And so, the Court declines to dismiss this claim upon the ground that Section 14 of the Podcast License Agreement is vague and unenforceable.

The Defendants' second ground for dismissing this claim, that Urban One improperly brings a standalone claim for breach of the implied covenant of good faith and fair dealing in the amended complaint, is also unavailing. As the Defendants correctly observe, Maryland does not recognize an independent cause of action for breach of this duty. *Mount Vernon Props., LLC v. Branch Banking And Tr. Co.*, 907 A.2d 373, 380–381 (Md. App. 2006); *Baker v. Sun Co.*, 985 F. Supp. 609, 610 (D. Md. 1997). But a careful reading of the amended complaint makes clear that Urban One does not assert a standalone claim for breach of the implied covenant of good faith and fair dealing in this case. ECF No. 24 at ¶¶103-104 (Urban One alleges in Count I of the amended complaint that "[t]he Agreements include an implied covenant of good faith and fair dealing" and that, "[i]n addition to and/or as a pleading in the alternative," the Defendants breached the implied covenant by manipulating the Podcast's download metrics, violating Urban One's exclusive distribution rights and allowing Mick Unplugged to be dissolved."); *see also* ECF No. 31 at 10–11. Given this, the Court reads the amended complaint to incorporate the factual allegations about the Defendants' breach of the implied covenant of good faith and fair dealing into Urban One's breach of contract claim. And so, the Court also declines to dismiss this claim.

**C. Urban One's Standalone Claim For Pro-Rated Damages Is Not Plausible**

The Defendants are, however, on stronger footing in arguing that Urban One's "pro-rated

[7] The Defendants' argument that the ambiguity in Section 14 renders the Podcast License Agreement unenforceable is without legal support under Maryland law. ECF No. 29 at 17. The Court also observes that the Podcast License Agreement also provides that, if any provision is ruled invalid or unenforceable, [***]. ECF No. 3-1 at 11.

damages for breach of contract" claim in Count II of the amended complaint is not plausible. As the Defendants correctly observe, this claim is a request for damages and not an independent cause of action under Maryland law. *Howell Petroleum Corp. v. Leben Oil Corp.*, 976 F.2d 614, 622 (10th Cir. 1992) (a request for damages "does not constitute a cause of action; rather damages are a remedy for a legal wrong"); *see also Fare Deals Ltd. v. World Choice Travel.Com, Inc.*, 180 F. Supp. 2d 678, 682 n.1 (D. Md. 2001); *Charles v. Front Royal Volunteer Fire & Rescue Dep't, Inc.*, 21 F. Supp. 3d 620, 631 (W.D. Va. 2014) (observing that a request for punitive damages "is not a 'cause of action'"). And so, the Court must DISMISS Count II of the amended complaint. *See, e.g.*, *Orteck Int'l Inc. v. Transpacific Tire & Wheel, Inc.*, 704 F. Supp. 2d 499, 521 (D. Md. 2010); *Simone v. VSL Pharm., Inc.*, No. 15-1356, 2017 WL 66323, at *10 (D. Md. Jan. 5, 2017).

**D. Urban One States A Claim For Unjust Enrichment**

Turning to Urban One's unjust enrichment claim in Count III of the amended complaint, the Court is satisfied that this claim is plausible. To state a claim for unjust enrichment under Maryland law, Urban One must allege facts to show: (1) a benefit conferred upon the Defendants by Urban One; (2) an appreciation or knowledge by the Defendants of the benefit; and (3) acceptance or retention by the Defendants of the benefit without the payment of its value. *Singh v. Lenovo (United States) Inc.*, 510 F. Supp. 3d 310, 328 (D. Md. 2021) (citing *Hill v. Cross Country Settlements, LLC*, 402 Md. 281, 295 (2007)). Generally, an unjust enrichment claim "cannot be maintained when the subject matter of the claim is . . . governed by an express contract." *Id.* (citation omitted). But there are several exceptions to this rule, including where there is evidence of fraud or bad faith on the part of the defendant. *Id.* at 328–29. And so, where a plaintiff has properly pleaded fraud, or bad faith in the formation of the contract that would otherwise govern, an unjust enrichment claim may proceed, notwithstanding the existence of an express contract. *Singh*, 510 F. Supp. 3d at 329; *see also Kwang Dong Pharm. Co. v. Han*, 205 F. Supp. 2d 489, 497 (D. Md. 2002).

In this case, the Defendants argue that Urban One cannot pursue its unjust enrichment claim, because there is an express contract that governs the parties' relationship. ECF No. 29 at 22–24. But the amended complaint makes clear that Urban One alleges that the Defendants engaged in fraud and/or bad faith in the formation of these agreements. ECF No. 24 at ¶¶ 28, 29, 40, 45, 47, 49, 57, 94 and 133 (alleging, among other things, that Urban One relied on download

metrics provided by the Defendants to enter into the Podcast License Agreement, the Defendants fraudulently misrepresented that the Podcast's downloads reflected authentic audience engagement, the Defendants' fraudulent misrepresentations induced Urban One to enter into the Amendment, and the Defendants later acknowledged using a third-party service to increase the number of downloads for the Podcast). Given this, Urban One has put forward factual allegations that, taken as true, show that there was fraud and/or bad faith in the formation of the contracts at issue. *Singh*, 510 F. Supp. 3d at 329; *see also Kwang Dong Pharm. Co.*, 205 F. Supp. 2d at 497.[8] And so, the Court, DENIES the Defendants' motion to dismiss Count III of the amended complaint.

**E. Urban One States Plausible Fraud And Fraudulent Inducement Claims**

As a final matter, the Court is also satisfied that Urban One states a plausible fraudulent inducement, and fraud claims in Counts IV and V of the amended complaint. To state a fraudulent inducement claim, Urban One must allege facts to show: "(1) a material representation of a party was false; (2) falsity was known to that party or the misrepresentation was made with such reckless indifference to the truth as to impute knowledge to him or her; (3) the misrepresentation was made with the purpose to defraud, known as 'scienter'; (4) the person justifiably relied on the misrepresentation; and (5) [it] suffered damage directly resulting from the misrepresentation." *Butrim v. Mayor & City Council of Balt.*, 821 F. Supp. 3d 509, 525 n.5 (D. Md. 2026) (citing *Airport Square Holdings, LLC v. GCCFC 2007-GG9 Colonial Facilities, LLC*, 16-02883, 2017 WL 639230, at *6 (D. Md. Feb. 16, 2017)); *Lawley v. Northam*, No. 10-1074, 2011 WL 6013279, at *9 (D. Md. Dec. 1, 2011). To state a fraud claim, Urban One must allege facts to show: "(1) that the [Defendants] made a false representation to [it], (2) that its falsity was either known to the [Defendants] or that the representation was made with reckless indifference as to its truth, (3) that the misrepresentation was made for the purpose of defrauding [it], (4) that [it] relied on the misrepresentation and had the right to rely on it, and (5) that [it] suffered compensable injury resulting from the misrepresentation." *Kantsevoy v. LumenR LLC*, 301 F. Supp. 3d 577, 601 (D. Md. 2018) (quoting *Nails v. S & R, Inc.*, 639 A.2d 668 (Md. 1994)).

[8] The Defendants' argument that Urban One's unjust enrichment claim is implausible, because Urban One cannot seek the remedy of disgorgement in this case, is also unconvincing. ECF No. 29 at 24–25. Under Maryland law, a request for disgorgement is a demand for relief, which "forms no part" of the statement of Urban One's unjust enrichment claim. *Int'l Fid. Ins. Co. v. Mahogany, Inc.*, No. 11-1708, 2011 WL 3055251, at *2 n.1 (D. Md. June 25, 2011). Given this, the Court also declines to dismiss Urban One's unjust enrichment claim at the 12(b)(6) stage of this litigation.

Both of the claims are also subject to the heightened pleading standard under Fed. R. Civ. P. 9(b), which requires that Urban One "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *see also Dominion Fin. Servs., LLC v. Pavlovsky*, 673 F. Supp. 3d 727, 747 (D. Md. 2023).

Relevant here, Maryland law provides that the tort of fraudulent inducement requires showing that a party "has been led by another's guile, surreptitiousness, or other form of deceit to enter into an agreement to his detriment." *Rozen v. Greenberg*, 886 A.2d 924, 930 (Md. App. 2005). And so, the Court must examine the amended complaint to determine if there are sufficient factual allegations contained therein to show that the Defendants alleged fraudulent misrepresentations induced Urban One to enter into the Podcast License Agreement and the Amendment.

In this regard, a careful reading of the amended complaint shows that Urban One sufficiently alleges facts to show that Defendants' fraudulent misrepresentations regarding the performance of the Podcast induced it to enter into the Amendment in 2025. Notably, Urban One alleges that it noticed unusual download and listener patterns for the Podcast in November 2024, and that the Defendants misrepresented that this data was attributable to guest promotion and to a reporting error by Urban One's hosting platform. ECF No. 24 at ¶¶ 38–40. Urban One also alleges that it relied upon the Defendants' representations in March 2025, regarding the high download metrics for the Podcast, in deciding to enter negotiations with the Defendants to execute the Amendment. *Id.* at ¶¶ 44–45, 47, 49 and 133. Urban One alleges in the amended complaint that it relied upon the Defendants' misrepresentations in deciding to continue is contractual relationship with the Defendants, by entering the Amendment on March 28, 2025. *Id.* at ¶¶ 41, 47–50, 137, 141, 149 and 153. The Court is satisfied that these factual allegations, taken as true, show that the Defendants alleged fraudulent misrepresentations induced Urban One to enter the Amendment.

While a somewhat closer question, the Court is also satisfied that the amended complaint contains sufficient factual allegations to show that the Defendants alleged fraudulent misrepresentations about the metrics for the Podcast similarly induced Urban One to enter into the original Podcast License Agreement. As discussed above, Urban One alleges that it relied on download metrics provided by the Defendants in 2024, to enter into the Podcast License Agreement. *Id.* at ¶¶ 28, 29 and 139. Urban One also alleges that the Podcast License

Agreement contains a provision that prohibits the Defendants from artificially and/or fraudulently inflating the metrics for the Podcast, "due to the importance of download and audience engagement data for the consideration provided" under that agreement. *Id*. at ¶ 37.

Given this, the Court is satisfied that these factual allegations, taken as true, are sufficient to show, how the Defendants allegedly induced Urban One to enter into the Podcast License Agreement, by misrepresenting the metrics for the Podcast.[9] And so, the Court declines to dismiss Urban One's fraudulent misrepresentation claim.

Lastly, while somewhat difficult to discern, the Defendants' argument for dismissing Urban One's fraud claim in Count V of the amended complaint is unconvincing. The Defendants argue that the Court should dismiss Urban One's fraud claim, because Urban One did not justifiably rely on their representations about the metrics for the Podcast in deciding to enter into the Podcast License Agreement and the Amendment. *Id.* at 30–39. But, as discussed above, the amended complaint contains sufficient factual allegations to plausibly allege that Urban One relied upon the Defendants' misrepresentations about the Podcast's downloads and audience engagement in deciding to enter into the Podcast License Agreement and the Amendment. Given this, Urban One states with particularity a fraud claim in Count V of the amended complaint. And so, the Court also declines to dismiss this claim.

**F. The Court Grants Urban One's Motion To Seal**

As a final matter, the Court GRANTS Urban One's motion for leave to file its response in opposition to the Defendants' motion to dismiss the amended complaint under seal. ECF No. 30. A review of this filing shows that Urban One's response contains sensitive information that is confidential under the terms of the Podcast License Agreement and the Amendment. The Court is also satisfied that there is no less restrictive alternative to sealing this sensitive information that would protect the confidentiality of this information. And so, the Court GRANTS the Urban One's motion for leave to file its response in opposition to the Defendants' motion to dismiss the amended complaint under seal.

---

[9] The Court also agrees with Urban One that the decision to not rescind the Podcast License Agreement and the Amendment does not preclude it from pursuing a fraudulent inducement claim in this case. Maryland law makes clear that a party who has been induced into a contract by fraud may elect "to rescind the contract or to ratify the contract and seek damages." *Sonnenberg v. Sec. Mgmt. Corp.*, 599 A.2d 820, 823 (Md. 1992). And so, the failure promptly to rescind the agreements at issue here does not preclude Urban One from pursuing other remedies with regard to its fraudulent inducement claim. *Id.* at 823–24.

## V. CONCLUSION

For the foregoing reasons, the Court:

(1) **GRANTS-in-PART** and **DENIES-in-PART** the Defendants' motion to dismiss (ECF No. 29);

(2) **GRANTS** the Plaintiff's motion for leave to file its response to the Defendant's motion to dismiss amended complaint under seal (ECF No. 30); and

(3) **DISMISSES** Count II of the amended complaint (ECF No. 24).

A separate Order shall issue.

**IT IS SO ORDERED.**

s/ Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
United States District Judge